UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| MICHAEL McLAUGHLIN, Jr., individually and on behalf of all others similarly situated,<br><br>v.<br><br>LAFAYETTE STEEL ERECTOR, INC. d/b/a LSE CRANE AND TRANSPORTATION | Case No. 6:20-cv-00153<br>FLSA Collective Action |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Michael McLaughlin, Jr. brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (FLSA).

2. Lafayette Steel Erector, Inc. d/b/a LSE Crane and Transportation (LSE) offers rental services for cranes and related equipment.

3. To perform its rental services, LSE employs many workers like McLaughlin.

4. McLaughlin, like other workers, was paid an hourly rate by LSE.

5. LSE also paid McLaughlin additional compensation, such as a per diem each day and what LSE called an "hourly per diem."

6. When calculating McLaughlin's regular rate of pay for determining his overtime rate, LSE did not include this additional compensation.

7. This means that McLaughlin's overtime hours, when paid, were at an artificially low rate.

8. LSE's policy of excluding the per diems from McLaughlin's regular rate violates the FLSA.

9.     In addition to LSE's artificially low rates, it simply didn't pay overtime for certain overtime hours worked by McLaughlin.

10.    More specifically, LSE did not pay McLaughlin and workers like him, for the significant time McLaughlin and these other workers would spend traveling between LSE's jobsites.

11.    McLaughlin is one of many non-exempt, hourly workers who were denied proper overtime wages due to LSE's illegal policy.

12.    This collective action seeks to recover the unpaid wages and other damages owed to McLaughlin and other workers like him at LSE.

## JURISDICTION AND VENUE

13.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because LSE maintains its principal office in this District and Division.

## PARTIES

15.    McLaughlin was, at all relevant times, an employee of LSE.

16.    McLaughlin was an hourly employee of LSE.

17.    McLaughlin's written consent is attached as Exhibit A.

18.    The class of similarly situated employees or potential class members sought to be certified is defined as:

> **All current and former employees of Lafayette Steel Erector, Inc. who were paid by the hour, but were not paid 1.5x their regular hourly rate (including adjustments for "per diems" and/or "hourly per diems") or who were not paid overtime for drive time, at any point in the past three years.**

19. LSE is a Louisiana corporation with its headquarters and principal place of business in Lafayette Parish, Louisiana. It may be served by service upon its registered agent, **Jolene Credeur, 313 Westgate Rd., Lafayette, LA 70506**, or by any other method authorized by law.

## COVERAGE UNDER THE FLSA

20. LSE was an employer of McLaughlin within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

21. LSE was an employer of the Putative Class Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

22. LSE was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

23. During at least the last three years, LSE has had gross annual sales in excess of $500,000.

24. LSE was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

25. LSE employs many workers, including McLaughlin, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

26. The goods and materials handled, sold, or otherwise worked on by McLaughlin, and other LSE employees and that have been moved in interstate commerce include, but are not limited to, cranes, rigging, forklifts, man baskets, spreader bars, and other construction equipment.

## FACTS

27. LSE provides rental services for cranes and similar equipment.

28. McLaughlin began working for LSE in January 2013.

29. McLaughlin was employed as an operator providing crane operation services to LSE's clients.

30. McLaughlin was an hourly employee of LSE.

31. LSE did not pay McLaughlin a salary.

32. LSE did not pay McLaughlin on a fee basis.

33. LSE paid McLaughlin by the hour.

34. LSE also paid McLaughlin additional compensation, including per diems.

35. LSE paid McLaughlin one or more per diems.

36. LSE paid McLaughlin a per diem on a daily basis.

37. That is, LSE paid McLaughlin that daily per diem on each day he worked.

38. McLaughlin reported the hours he worked to LSE on a regular basis.

39. McLaughlin's hours are reflected in LSE's records.

40. McLaughlin normally worked more than 40 hours in a week.

41. LSE also paid McLaughlin a per diem, at least in part, on an hourly basis.

42. The "per diem" LSE paid McLaughlin on an hourly basis is a so-called "hourly per diem."

43. This "hourly per diem" was based solely on the number of hours McLaughlin worked.

44. The "hourly per diem" would vary according to the number of hours McLaughlin worked.

45. The "hourly per diem" was not based on, or related to, McLaughlin's reimbursable expenses.

46. But LSE did not factor this "hourly per diem" into McLaughlin's regular rate for the purposes of calculating McLaughlin's overtime rate.

47. So when LSE did pay McLaughlin overtime, LSE would base that overtime rate only on McLaughlin's regular hourly pay without regard to the "hourly per diem."

48. But under the FLSA, LSE was required to include this "hourly per diem" in calculating McLaughlin's overtime pay.

49. As a result, when he was paid overtime, McLaughlin was paid only on his base hourly rate, rather than his full "regular rate" as required by the FLSA.

50. LSE did not include the per diem, "hourly per diem," or any other additional compensation in the regular rate of pay for the purposes of determining the overtime rate for McLaughlin or the Putative Class Members.

51. These per diems were not discretionary.

52. The per diems were not excludable from the regular rate of pay.

53. So when he worked more than 40 hours in a week, LSE did not pay McLaughlin at 1.5x his regular rate for his overtime hours.

54. And there were other overtime hours for which LSE didn't pay McLaughlin at all.

55. McLaughlin would typically start his day at LSE's yard, where he was required to stay and where he would prepare for the day before traveling to a designated jobsite.

56. McLaughlin would travel about one to 1.5 hours from the yard to the jobsite.

57. McLaughlin would also have to prepare his LSE vehicle and any other equipment needed for each day's work.

58. The work at the yard sometimes included gathering supplies and materials such as lubricant, grease, cleaning agents, rags, degreaser, and strobe lights.

59. The work and preparation at the yard was integral and indispensable to his principal activities for which LSE employed him.

60. After completing his work at the jobsite, McLaughlin would then travel about the same distance and time back to LSE's yard.

61. McLaughlin would thus have to drive around one to 1.5 hours, or more, each way, on every day he worked.

62. McLaughlin would have to drive around two to three hours, or more, on every day he worked.

63. McLaughlin would also have to get gas for LSE's vehicle several times each week.

64. Getting gas would add 20-30 minutes to McLaughlin's travel time.

65. Refueling LSE's vehicle was integral and indispensable to his principal activities for which LSE employed him.

66. For all of this travel, McLaughlin operated LSE's own company vehicles.

67. This travel was over public highways and roads.

68. McLaughlin's LSE vehicle was a Ford F250.

69. The trucks McLaughlin would operate for LSE weighed 10,000 pounds or less.

70. The trucks McLaughlin would operate for LSE had a gross vehicle weight rating of 10,000 pounds or less.

71. The LSE trucks operated by LSE's other drivers were the same size and weight as the one assigned to McLaughlin.

72. In all, LSE did not pay drive time for the time McLaughlin spent: traveling to and from the jobsite; traveling to and from refueling LSE's vehicles and equipment; and selecting and loading, and unloading and restocking supplies and materials in the yard.

73. All of that drive time was integral and indispensable to McLaughlin's principal activities for LSE.

74. All of that drive time was therefore compensable.

75. As part of his driving for LSE, McLaughlin did not cross state lines.

76. Numerous other LSE workers, including the Putative Class Members, also had hours excluded from their overtime pay due to drive time, similar to McLaughlin.

77. LSE was well aware of the overtime requirements of the FLSA.

78. LSE nonetheless failed to pay proper overtime to certain hourly employees, such as McLaughlin.

79. These hourly employees performed work that is primarily manual labor in nature.

80. Under the FLSA, the work performed by these employees is non-exempt manual labor.

81. While some training by LSE may be involved, McLaughlin and the Putative Class Members' jobs do not require advanced skill or intense study.

82. McLaughlin and the Putative Class Members are not highly trained mechanics, technicians, or engineers.

83. McLaughlin and the Putative Class Members were not allowed to vary from the job duties that were predetermined for them.

84. Truly, these workers have little or no discretion in how to do their job, or the jobs of others they work with.

85. Even though McLaughlin and the Putative Class Members perform very routine, technical, and manual labor job duties, LSE uniformly failed to pay overtime to these workers.

86. LSE knew, or showed reckless disregard for whether, its policy of not calculating and paying overtime at the full, regular hourly rate violated the FLSA.

87. LSE's failure to pay full overtime to these hourly workers was, and is, a willful violation of the FLSA.

### COLLECTIVE ACTION ALLEGATIONS

88. McLaughlin incorporates all other allegations.

89. The illegal pay practices LSE imposed on McLaughlin was likewise imposed on the Putative Class Members.

90. LSE employs many other hourly workers who worked over 40 hours per week and were subject to LSE's same pattern, practice, and policy of failing to pay overtime at 1.5x the workers' regular rates of pay.

91. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

92. Based on his experience and tenure with LSE, McLaughlin is aware that LSE's illegal practices were imposed on the Putative Class Members.

93. These workers were similarly situated within the meaning of the FLSA.

94. LSE's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

### CAUSE OF ACTION–OVERTIME VIOLATIONS OF THE FLSA

95. McLaughlin incorporates all other allegations.

96. By failing to pay McLaughlin and the Putative Class Members overtime at 1.5 times their regular rates, LSE violated the FLSA. 29 U.S.C. § 207(a).

97. LSE owes McLaughlin and the Putative Class Members the difference between the rate actually paid and the proper overtime rate.

98. Because LSE knew, or showed reckless disregard for whether, its pay practices violated the FLSA, LSE owes these wages for at least the past three years.

99. LSE also owes McLaughlin and the Putative Class Members an amount equal to the unpaid overtime wages as liquidated damages.

100. McLaughlin and the Putative Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

### RELIEF SOUGHT

101. Wherefore, McLaughlin prays for judgment against LSE as follows:

   (a) For an order certifying this case as a collective action for the purposes of the FLSA claims;

   (b) For an order finding LSE liable for violations of state and federal wage laws with respect to McLaughlin and all Putative Class Members covered by this case;

   (c) For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to McLaughlin and all Putative Class Members covered by this case;

   (d) For a judgment awarding McLaughlin and all Putative Class Members covered by this case their costs of this action;

(e) For a judgment awarding McLaughlin and all Putative Class Members covered by this case their attorneys' fees;

(f) For a judgment awarding McLaughlin and all Putative Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

(g) For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Matthew S. Parmet*
By: _____
**Matthew S. Parmet**, T.A.
Louisiana Bar # 32855
**PARMET PC**
PO Box 540907
800 Sawyer St. (77007)
Houston, Texas 77254
phone  713 999 5228
fax     713 999 1187
matt@parmet.law

**Attorneys for Plaintiffs**